VITEK SUPPLY CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 91–05–00367

(Decided February 5, 1993)

*Foley & Lardner (Jon P. Christiansen)* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, *(Carla Garcia-Benitez),* United States Department of Justice, Civil Division, for the defendants.

### OPINION

RESTANI, *Judge:* Plaintiff challenges Customs' classification for tariff purposes of a preparation used in animal feeding. The dispute centers on interpretation of the Harmonized Tariff Schedules of the United States ("HTSUS") and is before the court on cross-motions for summary judgment.

### FACTS

The particular product at issue is known as a veal premix. It is agreed that the veal premix contains six percent by weight of a grain product, that is, pre-gelatinized corn starch. The remainder is composed of vitamins and minerals. The vitamins and minerals, if not part of the animal food preparation, would be suitable for human consumption.[1] The vitamins and minerals are not grain or a grain product.

---

[1] Presumably, humans could, but would not normally, ingest the entire product. It is not marketed for human consumption.

DISCUSSION

The relevant sections of HTSUS (1991) read as follows:

CHAPTER 23—RESIDUES AND WASTE FROM THE FOOD INDUSTRIES; PREPARED ANIMAL FEED

*Note:*

1. Heading 2309 includes products of a kind used in animal feeding, not elsewhere specified or included, obtained by processing vegetable or animal materials to such an extent that they have lost the essential characteristics of the original material, other than vegetable waste, vegetable residues and byproducts of processing.

*Additional U.S. Note:*

1. The term *"mixed feeds and mixed-feed ingredients"* in subheading 2309.90.10 embraces products of heading 2309 which are admixtures of grains (or products, including byproducts, obtained in milling grains) with molasses, oilcake, oil-cake meal **or feedstuffs,** and which consist of not less than 6 percent by weight of grain or grain products.

    * * *                  * * *                 *

2309 Preparations of a kind used in animal feeding:

    2309.90 Other:

| | | |
|---|---|---|
| 2309.90.10 | **Mixed feeds or mixed feed ingredients** ..................... | Free |
| 2309.90.90 | **Other** ............................. | 3% |

HTSUS (emphasis supplied; underscoring in original).

Customs has classified the veal premix under item 2309.90.90. Plaintiff asserts that the proper classification is item 2309.90.10. In order to be classified under item 2309.90.10, the veal premix must be a preparation used in animal feeding, and must be at least six percent grain or grain product. Additional U.S. Note 1, Chapter 23, HTSUS. It is agreed that these requirements are met. In addition, the remainder of the premix must be "molasses, oilcake, oil-cake meal or feedstuffs." *Id.* Customs asserts that the vitamins and minerals are not feedstuffs because "feedstuffs" do not include items which are food for human beings and the vitamins and minerals, if not part of the veal premix, would be suitable food for human beings. Plaintiff, on the other hand, claims that as the vitamins and minerals are incorporated into the veal premix, an animal food, they are not food for human beings.

The issue then is what is meant by feedstuffs in Additional U.S. Note 1, Chapter 23, HTSUS. The following definitions are helpful, but not dispositive. *Corporacion Argentina de Productores de Carne v. United States,* accepted a definition of feedstuff as "any material or substance used or intended for use in the feeding of livestock, poultry, fur-bearing animals or other animals for any purpose whatever." 32 CCPA at 175, 183 (1945) (citation omitted). The parties have agreed that the diction-

ary definition found in *American Customs Brokerage Co. v. United States,* 76 Cust. Ct. 146 (1976), is correct. It is "a feed for domestic animals; *usu:* any of the constituent nutrients of an animal ration." *Id.* at 152 (citing *Webster's Third New International Dictionary of the English Language*). Other definitions cited by the parties are not inconsistent with these.

The government relies principally on *American Customs* which was decided under the Tariff Schedules of the United States, not HTSUS.[2] The former law referred to "other feedstuffs" rather than just "feedstuffs." In *Corporacion Argentina,* the court indicated that molasses, oil cake, oil-cake meal, and feedstuffs belonged to "no single general class, except insofar as they are feedstuffs." 32 CCPA at 184–85. The court in *American Customs* was aware of this construction when it determined that binders made of byproducts of paper-making were not feed for animals and therefore were not feedstuffs. 76 Cust Ct. at 152.[3] The parties have not argued, and the court does not believe, that the absence of the word "other" in current law renders the prior case law inapplicable.

*American Customs* is distinguishable, however, from the case at hand because in that case the court found that the purpose of the alleged feedstuff was as a binding agent, not as a nutrition source. 76 Cust. Ct. at 152. Obviously, vitamins and minerals are primarily a nutrition source. The *American Customs* court and the parties here accept a definition of feedstuffs which includes "any of the constituent nutrients of an animal ration." *Id.* Unless there is another requirement for qualification as "feedstuffs," the vitamins and minerals would appear to satisfy the language of the Additional U.S. Note.

Thus, the only issue remaining is whether the vitamins and minerals are not feedstuffs because they could be sold for human consumption, if not incorporated into the mixture at issue. *Corporacion Argentina* indicates that the product need not be unfit for human consumption in order to be a feedstuff, although it found the importer had shown unfitness. 32 CCPA at 183. It stated *in dicta* that the feedstuffs did not "include that which ordinarily is food for human beings." *Id.* This language is less than persuasive, because the court seemed to be most concerned that the entire mixture, composed of meat, cereal, vegetables and brewer's yeast was dog food, and not ordinarily food for human beings. Tellingly, the court stated that feedstuffs did not exclude meat, without a discussion of whether all of the meat products (and for that matter, the vegetables and brewer's yeast) contained in the product were outside of the category of ordinary human food. *Id.* at 182–83. It seemed to view examination of the *quality* of constituent ingredients of the mixture an unre-

---

[2] None of the cases cited herein were decided under HTSUS.

[3] Defendant also relies on *United States v. F.W. Myers & Co.,* 29 CCPA 34 (1941), but that case stands for the proposition that a product must be more than grain or grain product to be a *mixed* feed.

warding avenue of inquiry. Thus, the quality of the vitamins, which are not incorporated into a human food, are irrelevant in this case.

Accordingly, under applicable precedent the proper test is whether the *mixture* is an animal feed and whether the claimed feedstuff portion of the mixture is a nutrition source. As the mixture at issue is clearly an animal, not human, food and it is composed of six percent grain product and additional nutrition sources, it is a mixed feed or mixed feed ingredient subject to classification under item 2309.10, HTSUS and entitled to enter duty free.